UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MEDCHOICE RISK RETENTION
GROUP INC.,

               Plaintiff,

   v.

STEVEN KATZ, M.D. and REI
PROTECT, LLC,

              Defendants.

C17-387-TSZ

ORDER

THIS MATTER comes before the Court on defendants' motion for summary judgment, docket no. 7, and plaintiff's motion to vacate, docket no. 22. Having reviewed the motions and all relevant filings, and considered the arguments of counsel at the hearing on August 29, 3017, the Court enters the following Order.

**Background**

    A.    **Factual Background**

        1.  **The Underlying Dispute**

Defendant Steven Katz M.D. formed REI Protect, LLC ("REI Protect") to provide claims prevention and management services to reproductive endocrinology and infertility doctors (collectively "infertility doctors"). Declaration of Benjamin Stone, docket no. 8, Ex. A (Arbitration Transcript at 17:14-18:21); Complaint, docket no. 1, ¶ 3.3. To service its clients,

REI Protect sought out an insurance company to issue appropriate policies and was eventually introduced to plaintiff Medchoice Risk Retention Group, Inc. ("MedChoice"), Stone Decl., Ex. A (Arbitration Transcript at 18:22-21:2), a national insurance company that provides specialized medical professional liability and casualty coverages, products, and services. Complaint ¶ 3.1.

In 2015, REI Protect and MedChoice entered into two contracts—a Limited Services Agreement, Stone Decl., Ex. B, and an Exclusive Producer Agreement, Stone Decl., Ex. C. Under the terms of the Limited Services Agreement, REI Protect agreed to provide certain limited services to MedChoice in exchange for a $60,000 advance of commissions. Stone Decl., Ex. B § 2. The Limited Services Agreement provided that the advance was to be repaid by "commission offset" as set forth in the Exclusive Producer Agreement. *Id.* at § 3.

The Limited Services Agreement also required that REI Protect "obtain all required producer's licenses and insurance agency licenses in any state in which they market the Program, including but not limited to the State of Washington and California." Stone Decl., Ex B, § 1(f). On April 10, 2015, Dr. Katz applied for an insurance producer license in California. Stone Decl., Ex A. (Arbitration Transcript at 24:17-25:19). While Dr. Katz's application for an insurance producer license was pending, REI Protect and MedChoice executed the Exclusive Producer Agreement, effective June 1, 2015. Stone Decl., Ex. C.

The Exclusive Producer Agreement required REI Protect to act as an insurance producer exclusively on behalf of MedChoice for a term of five years and set forth a commission structure by which REI Protect would be compensated for its services. The Exclusive Producer Agreement set forth a dispute resolution procedure pursuant to which "all disputes involving this transaction, or between the parties hereto with respect to the subject matter thereof," were to be

resolved by a three-step process: informal negotiation, followed by mediation, and if necessary, binding arbitration. Stone Decl., Ex. C, § 5.

On January 12, 2016, the State of California denied Dr. Katz's application for an unrestricted insurance producer's license and issued a restricted license, which allowed Dr. Katz to act as an insurance producer in his personal capacity, but precluded him from acting as a "controlling person" of REI Protect. Declaration of Cindy Lin, docket no. 14, Ex. A. As a result, in April of 2016, MedChoice requested that REI Protect assign the Exclusive Producer Agreement to Dr. Katz. Stone Decl., Ex. D. Dr. Katz declined to do so because, as he testified at Arbitration, "the relationship had failed." Stone Decl., Ex. A (Arbitration Transcript at 35:16-18).

On May 2, 2016, MedChoice informed Dr. Katz that it had issued payment for a portion of commissions owed to REI Protect due to an oversight and that MedChoice would be "unable to process" further commissions unless "reassignment" of the Exclusive Producer Agreement was completed. Stone Decl., Ex. E. Dr. Katz testified at the Arbitration that he understood this email to mean that "the contract was over." Stone Decl., Ex. A (Arbitration Transcript at 39:18-40:14).

By Letter dated July 25, 2016, REI Protect informed MedChoice that it was exercising its right to terminate the Exclusive Producer Agreement pursuant to Section 4.2(e), Lin Decl., docket no. 23, Ex. F, because the Exclusive Producer Agreement permitted termination "if any public authority cancels or declines to renew . . . REI Protect's or Dr. Katz's license to sell insurance," Stone Decl., Ex. C § 4.2(e). Shortly after terminating the Exclusive Producer Agreement with MedChoice, Dr. Katz entered into an agreement to act as an insurance producer for The Doctor's Company, Stone Decl., Ex. A (Arbitration Transcript at 141:1-142:14).

On August 9, 2016, after learning that Dr. Katz had become an insurance producer for The Doctor's Company, MedChoice's counsel wrote to Dr. Katz claiming that his termination of the agreement was invalid because no public entity had canceled or declined to renew either Dr. Katz's or REI Protect's license. Stone Decl., Ex. H.

## 2. The Dispute Resolution Process

On August 23, 2016, MedChoice invoked the dispute resolution process set forth in Section 5 of the Exclusive Producer Agreement. Lin Decl., docket no. 23, Ex. J. On September 20, 2016, MedChoice and REI Protect conducted a direct negotiation and on October 20, 2016, mediated the dispute, neither of which was successful. Stone Decl., ¶ 10.

On November 16, 2016, REI Protect filed and served a demand for arbitration with the American Arbitration Association ("AAA"). Stone Decl., ¶ 11, Ex. I. REI Protect sought a declaration that the Exclusive Producer Agreement was illegal and unenforceable, because REI Protect could not obtain an insurance producer license in California, and also asserted a claim for tortious interference. *Id.* By letter to REI Protect and MedChoice dated November 28, 2016, the AAA acknowledged receipt of the arbitration demand and informed the parties that there would be a telephonic administrative conference on December 13, 2016 at 1:00 p.m. Stone Decl., Ex. J.

During the December 13 telephone conference, REI Protect requested that the arbitration be governed by the AAA's Expedited Procedures of the Commercial Rules ("Expedited Procedures"), which apply where the damages sought do not exceed $75,000. Stone Decl., ¶ 13, Ex. K. MedChoice did not participate in the telephone conference. Stone Decl., ¶ 12. On December 15, 2016, the AAA confirmed that the matter would be administered under the Expedited Procedures, provided the parties with a list of arbitrators and set a deadline of

December 22, 2016, for arbitrator selection submissions.  Stone Decl., Ex. L.  REI Protect

submitted its selections on December 21, 2016, but MedChoice did not submit a response by the

December 22 deadline.  Stone Decl., ¶ 15.

On December 27, 2016, MedChoice informed the AAA, for the first time, that

MedChoice was represented by outside counsel, Michael & Alexander.  Stone Decl., Ex. N.

Although the deadline for selecting arbitrators had passed, the AAA extended the deadline until

January 4, 2017,[1] to allow MedChoice to participate in the arbitrator selection process.  *Id.*  After

MedChoice submitted its arbitrator choice, the AAA appointed Peggy Rasmussen as arbitrator

on January 12, 2017.  After receiving no objections, the AAA confirmed Arbitrator Rasmussen's

appointment on January 23, 2017.  Stone Decl., Ex. P (Letter confirming Ms. Rasmussen's

appointment).

After confirmation, MedChoice and REI Protect disputed whether the use of the

Expedited Procedures were appropriate.  Stone Decl., Ex. Q.  On January 24, 2017, the AAA

confirmed that the matter would be administered under the Expedited Procedures.  Stone Decl.,

Ex. R.

On January 31, 2017, the AAA informed the parties that Arbitrator Rasmussen would

hold a preliminary conference call on February 7, 2017, and was available for a one-day hearing

Monday, February 20, 2017.  Stone Decl., Ex. S.  The letter notified the parties that absent any

objection, the AAA would schedule the hearing.  *Id.*  Also on January 31, 2017, MedChoice

filed and served its answer and counterclaim alleging damages in an amount between $75,000

---

[1] The AAA first extended the deadline to December 27, 2017, upon learning of Ms. Michael's
representation of MedChoice.  Stone Decl., Ex. N.  On December 29, 2017, Ms. Michael responded with
MedChoice's preferred arbitrator, but failed to follow the selection process outlined by the AAA.  *Id.*  The AAA
ultimately extended the deadline to January 4, 2017, with the agreement of counsel for Dr. Katz and REI Protect.
*Id.*

ORDER - 5

and $150,000.  Stone Decl., Ex. T.  MedChoice alleged that the Exclusive Producer Agreement was enforceable against both Dr. Katz and REI Protect, and that he and REI protect had materially breached the agreement.  *Id.*  MedChoice also claimed that Dr. Katz should be joined as a party to the arbitration and that REI Protect and Dr. Katz (1) misappropriated MedChoice's trade secrets; (2) "converted MedChoice's property" by retaining the commission advance despite ceasing to perform the obligations imposed by the Exclusive Producer Agreement; (3) tortiously interfered with MedChoice's business expectancies by inducing MedChoice insureds to cancel or decline to renew their MedChoice policies; (4) breached alleged fiduciary duties and/or duties of loyalty to MedChoice by referring REI Protect's clients to MedChoice's competitor; and (5) negligently misrepresented their ability to attract customers to MedChoice. *Id.*  On February 2, 2017, the AAA informed the parties that because MedChoice's counterclaims exceeded $75,000, the matter would be administered under the AAA's Regular Procedures, but did not strike the arbitration hearing tentatively set for February 20, 2017.  Lin Decl., docket no. 31, Ex. F.

On February 7, 2017, REI Protect submitted a letter objecting to MedChoice's counterclaim as untimely.  Stone Decl., ¶ 24, Ex. V.  Under the AAA's Commercial Rules, once an arbitrator has been appointed, "no new or different claim may be submitted except with the arbitrator's consent."  Stone Decl., Ex. K (Expedited Procedures); Ex. U (Standard Procedures).  Arbitrator Rasmussen provided MedChoice the opportunity to explain the delay in filing its counterclaim both during the preliminary conference call and by letter, which MedChoice submitted on February 10, 2017.  Stone Decl., ¶ 25, Ex. W.

On February 13, 2017, Arbitrator Rasmussen issued a scheduling order finding that MedChoice "knowingly delayed filing the counterclaim" and ruling that the case would remain

on the Expedited Procedures track. Stone Decl., Ex. X. Arbitrator Rasmussen allowed MedChoice to assert its counterclaim on the condition "that no damages will be sought or awarded in excess of the $75,000 limit for claims under the Expedited Procedures." *Id.* The February 13, 2017, Scheduling Order also confirmed that the arbitration hearing would occur on February 20, 2017. *Id.*

On February 14, 2017, MedChoice submitted nine subpoenas for Arbitrator Rasmussen to sign seeking to compel attendance of witnesses from The Doctor's Company, as well as one other third-party witness, and Dr. Katz himself. Stone Decl., Ex. Y. On Monday, February 20, 2017, a one-day arbitration hearing was held before Arbitrator Rasmussen. None of the third-party witnesses appeared at the arbitration. Lin Decl., docket no. 14, ¶ 8.

### 3. Submission of Post-Hearing Evidence

Just prior to the arbitration, on February 16, 2017, MedChoice served a Subpoena Duces Tecum on REI Protect requesting documents related to its business dealings with The Doctor's Company and MedChoice's insureds. Lin Decl., Ex. H. Counsel for REI Protect and Dr. Katz, however, failed to bring any responsive documents to the hearing. Stone Decl., Ex. A (Arbitration Transcript at 131:10-134:7); Lin Decl., docket no. 14, ¶ 10. As a result, MedChoice refused to turn over documents requested by REI Protect. Stone Decl., Ex. A (Arbitration Transcript at 134:10-135:7).

During the Arbitration, Arbitrator Rasmussen proposed a solution. *Id.* (Arbitration Transcript at 133:24-139:17). REI Protect would produce the documents the following day, and the parties would submit written closing arguments by Thursday at 5pm. *Id.* The parties copied Arbitrator Rasmussen on their communications regarding the status of the post-arbitration

production of documents. Lin Decl., docket no. 14, Ex. I. In response to the parties' dialogue, however, Arbitrator Rasmussen reversed course, sending the following email to the parties:

> The hearing concluded on Monday, February 20. The final record in this case consists of the testimony, documents and exhibits presented at that time. The record is now closed. The arbitration award will be issued on the basis of that record.

> Leave was granted for counsel to file a short brief on Thursday making any final argument based on the evidence at the hearing. No new documents or evidence may be presented with that submission.

*Id.* On February 23, 2017, MedChoice filed its closing brief with Arbitrator Rasmussen, reiterating the arguments it had advanced in its opening brief. Stone Decl., Ex. Z (Opening Brief) & Ex. AA (closing brief).

### 4. The Arbitration Award

On March 6, 2017, Arbitrator Rasmussen issued her Partial Final Award. Stone Decl., Ex. BB. Arbitrator Rasmussen found that the Exclusive Producer Agreement was "illegal and unenforceable" because (1) "it would have been illegal for REI Protect to perform the services required under the [Exclusive Producer Agreement] in California without having obtained the license that California denied"; and (2) "[t]he evidence showed that the issuance of the [insurance producer's] license to REI Protect was a condition precedent to REI Protect's obligations under the [Exclusive Producer Agreement]" that "failed when California denied the license to REI Protect." *Id.* at 1-2.

Arbitrator Rasmussen also rejected MedChoice's argument that Dr. Katz was bound by the Exclusive Producer Agreement, finding that "Dr. Katz was not a signatory to either the [Limited Services Agreement] or the [Exclusive Producer Agreement]" and that MedChoice failed to prove that Dr. Katz had "an obligation to assign the contracts to himself, or to personally

perform REI Protect's obligations under the [Exclusive Producer Agreement]." *Id.* at 2. Finally, Arbitrator Rasmussen rejected MedChoice's argument that the AAA lacked jurisdiction over the case, explaining that although MedChoice had initiated the dispute resolution process, both parties were "complainants" entitled to demand arbitration under the Exclusive Producer Agreement. *Id.* Based on her findings, Arbitrator Rasmussen denied REI Protect's tortious interference claim, denied "MedChoice's counterclaim for declaratory relief and damages" in its entirety, and held that REI Protect was entitled to an award of reasonable attorney's fees and costs. *Id.*

### 5. Attorney's Fees

After Arbitrator Rasmussen issued her Partial Final Award, REI Protect submitted a fee petition seeking $49,601 in fees, which included fees incurred during all three stages of the dispute resolution process mandated by the Exclusive Producer Agreement. Stone Decl., Ex. CC. MedChoice opposed the fee petition arguing that, at most, Arbitrator Rasmussen should award $7,344 in fees. Stone Decl., Ex. DD. In her Final Award, issued on March 27, 2017, Arbitrator Rasmussen rejected MedChoice's arguments and awarded REI Protect the full amount of its requested fees. Stone Decl., Ex. EE. In doing so, Arbitrator Rasmussen reasoned:

> I have carefully considered the submissions and arguments of both parties. I construe the contract provision for attorneys fees to encompass fees incurred in any part of the dispute resolution process that occurred, including informal and formal negotiation, mediation, and arbitration, and to include the claims and issues raised by both parties to the dispute, both before and after the filing of the demand for arbitration. REI Protect was awarded the declaratory relief it sought, and it is the prevailing party even though no monetary damages were sought or awarded. I find the hourly rates, the amount of time spent and the work performed by each of the attorneys on behalf of REI Protect are appropriate and reasonable and are supported by the declaration in support of REI Protect's fee application. REI Protect is therefore awarded its reasonable attorneys fees in the amount of $49,601.

*Id.*

**B.     Procedural Background**

MedChoice filed this action on March 13, 2017, alleging various claims for relief related to Dr. Katz's termination of the Exclusive Producer Agreement and subsequent work for The Doctor's Company.  After filing their Answer and Counterclaim, docket no. 6, defendants filed the pending motion for summary judgment, docket no. 7, seeking confirmation of the arbitration award and dismissal of plaintiffs' claims based on collateral estoppel and/or res judicata.  On June 5, 2017, MedChoice filed a motion to vacate Arbitrator Rasmussen's award in King County Superior Court.  Pl.'s Supp. Brief, docket no. 25 at 1.  On June 6, 2017, MedChoice also filed a motion to vacate the arbitration award in this Court, docket no. 22.

**Discussion**

**I.     Cross-Motions to Confirm and to Vacate the Arbitration Award**

The parties dispute whether the Federal Arbitration Act ("FAA") or Washington's Uniform Arbitration Act ("WAA") applies to the enforcement of Arbitrator Rasmussen's award.  The FAA applies to written arbitration provisions included in a contract "evidencing a transaction involving commerce."  9 U.S.C. § 2; *see also Speedware Motorsports v. Retail Information Systems*, 2006 WL 851711, at *1 (Mar. 29, 2006).  Plaintiff does not dispute that the Exclusive Producer Agreement is a contract involving interstate commerce.  Rather, plaintiff contends that the Exclusive Producer Agreement clearly evidences the parties' intent that the WAA apply to the enforcement of the arbitration award at issue in this lawsuit.  In doing so, plaintiff points to the parties' express agreement that the Exclusive Producer Agreement be "construed in accordance with, and governed by, the laws of the State of Washington."  *See* Stone Decl., Ex. C § 6.15.  However, well-established Ninth Circuit law holds that a general

choice of law clause cannot overcome the presumption that the FAA supplies the rules for

arbitration. *Sovak*, 280 F.3d at 1270; *accord Fid. Fed. Bank, FSB v. Durga Ma Corp.*, 386 F.3d

1306, 1312 (9th Cir. 2004). The Court concludes that the FAA applies to the enforcement of

Arbitrator Rasmussen's Final Award and that this Court is an appropriate forum for enforcement

of the award.[2] Such a conclusion is consistent with Section 5 of the Exclusive Producer

Agreement, which explicitly provides that "any party may have *full access to the courts* . . . to

enforce an arbitration award." Stone Decl., Ex. C § 5 (emphasis added).

### A.    Legal Standard

The scope of judicial review of arbitration awards under the FAA is extremely limited,

designed to preserve due process, but not to permit unnecessary public intrusion into private

arbitration procedures. *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 998

(9th Cir. 2003). The FAA supplies three mechanisms for enforcing arbitration awards: a judicial

order confirming an award, an order vacating it, or an order modifying or correcting it. *Hall

Street Assocs. LLC v. Mattel, Inc.*, 552 U.S. 576, 582 (2008). 9 U.S.C. § 10 provides the

exclusive grounds for vacating an award under the FAA. *Id.* at 584. Section 10 sets forth four

limited grounds for vacating an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of
> them;

---

[2] Even if the WAA applied, the Court rejects MedChoice's argument that the WAA confers exclusive on the Superior Courts of Washington to confirm, modify, or vacate the award. Under the WAA, "[a]n agreement to arbitrate providing for arbitration in this state confers exclusive jurisdiction on the court to enter judgment on an award under this chapter. RCW 7.04A.260(2). The WAA defines the term "court" to mean a court of competent jurisdiction in this state.

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).  Here, plaintiff claims that vacatur is warranted because Arbitrator Rasmussen is guilty of misconduct under § 10(a)(3) and exceeded her powers under § 10(a)(4).

## B.      Arbitrator Rasmussen is not Guilty of Misconduct

Plaintiff argues that Arbitrator Rasmussen engaged in misconduct by (1) refusing to remove the matter from the Expedited Procedures track and delay the February 20, 2017, hearing; and (2) refusing to consider the additional evidence REI Protect was ordered to produce during the Arbitration.  Neither of these circumstances warrants vacation of Arbitrator Rasmussen's award.

### 1.  Hearing Postponement

A party to an arbitration proceeding is not entitled to a postponement merely because one was requested.  *Fordjour v. Washington Mut. Bank*, 2010 WL 2529093, at *5 (N.D. Cal. June 18, 2010).  Because one of the policy purposes behind the FAA is the expeditious resolution of disputes, the arbitrator has wide discretion to decide whether to grant or deny a requested postponement.  *United States v. SF Green Clean, LLC*, 2014 WL 3920037, at *6 (N.D. Cal. Aug. 8, 2014).  Although the arbitrary denial of a reasonable request for postponement can serve as a ground for vacating an arbitration award, courts will not intervene in an arbitrator's refusal to postpone a hearing if there is any reasonable basis for the decision.  *See Fordjour*, 2010 WL

2529093, at *5; *see also Laws v. Morgan Stanley Dean Witter*, 452 F.3d 398, 400 (5th Cir. 2006); *El-Dorado School Dist. # 15 v. Cont'l Cas. Co.*, 247 F.3d 843, 848 (8th Cir. 2001).

Here, MedChoice complains that Arbitrator Rasmussen's decision to keep the case on the Expedited Procedures track, rather than postpone the hearing after MedChoice filed its counterclaim, unreasonably precluded MedChoice from obtaining third-party discovery and presenting testimony of out-of-state third party witnesses. But it was MedChoice's failure to initially participate in the proceedings, and then its own delay in filing its counterclaim, that resulted in the arbitration being placed on the expedited track.

MedChoice was served with the arbitration demand on November 16, 2016, and was informed that a telephonic administrative conference had been scheduled for December 13, 2016, by letter on November 28, 2016. MedChoice could have objected to REI Protect's request during the telephone conference that the arbitration proceed on the Expedited Procedures track, but MedChoice failed to even participate in the conference call. *See* Stone Decl., ¶ 12-13. The AAA sent a letter the day after the conference call specifically informing the parties that the matter would be administered under the Expedited Procedures. Stone Decl., Ex. L. MedChoice did not object to the matter's administration under the Expedited Procedures until January 23, 2017, after Arbitrator Rasmussen had been appointed and confirmed, and more than a month after the AAA had placed the matter on the Expedited Procedures track. *See* Lin Decl., docket no. 31, Ex. D; Stone Decl., Ex. Q.

Moreover, at the time of MedChoice's objections, the AAA's use of the Expedited Procedures was appropriate under the AAA's rules because the only claim before the arbitrator, REI Protect's, was for less than $75,000. The AAA specifically informed MedChoice after its

objection on January 23, 2017, that the matter was being administered under the Expedited Procedures because "the claim amount does not exceed $75,000," Stone Decl., Ex. R.

It was not until the arbitration hearing was tentatively scheduled for Monday, February 20, 2017, Stone Decl., Ex. S, that MedChoice finally submitted its counterclaim alleging an amount in controversy between $75,000 and $150,000, Stone Decl., Ex. T. Consistent with AAA rules, because Arbitrator Rasmussen had already been appointed and confirmed, MedChoice's submission required Arbitrator Rasmussen's consent. Stone Decl., Ex. K (E-2 Changes of Claim or Counterclaim), Ex. U (R-6 Changes of Claim). In considering whether to permit MedChoice to submit its counterclaim, Arbitrator Rasmussen provided MedChoice with two opportunities to explain why the counterclaim had not been submitted in a timely fashion— once during the February 7, 2017 preliminary hearing, Stone Decl., ¶ 25, and again in a written submission filed on February 10, 2017, Stone Decl., Ex. W. Upon review of MedChoice's arguments, Arbitrator Rasmussen found that MedChoice had "knowingly delayed filing the counterclaim" and that as such, the case would "remain on the Expedited Track." Stone Decl., Ex. X.

Given MedChoice's lengthy delay in filing its counterclaim, Arbitrator Rasmussen's decision to deny postponement of the hearing was reasonable considering that one of the policies underlying the FAA's liberal approach to arbitration is effectuating the efficient and expeditious resolution of disputes. *See SF Green Clean*, 2014 WL 3920037, at *6. Arbitrator Rasmussen's decision was based on her finding that MedChoice "knowingly delayed" filing its counterclaim. The Court will not disturb her decision, which is both reasonable in light of the circumstances

and committed to the Arbitrator's broad discretion.[3] *See Rita's Water Ice Franchise Co., LLC v. Simply Ices, Inc.*, 2008 WL 4483812, at *4 (E.D. Pa. Sept. 30, 2008).

### 2. Refusal to Consider Evidence

"Arbitrators enjoy wide discretion to require the exchange of evidence, and to admit or exclude evidence, how and when they see fit." *United States Life Ins. Co. v. Superior Nat'l Ins. Co.*, 591 F.3d 1167, 1175 (9th Cir. 2010). To support vacatur, the arbitrator's refusal to consider evidence "must demonstrate bad faith or be so gross as to amount to affirmative misconduct." *SF Green Clean*, 2014 WL 3920037, at *6 (quoting *United Paperworkers Int'l Union, AFLCIO v. Misco, Inc.*, 484 U.S. 29, 40 (1987)). In addition, the party challenging an arbitration award based on the exclusion of evidence must show that the evidentiary ruling prejudiced that party because the ruling "influenced the outcome of the arbitration." *See Employers Ins. Of Wausau v. Nat'l Union Fire Ins. Co.*, 933 F.2d 1481, 1490 (9th Cir. 1991).

MedChoice contends Arbitrator Rasmussen engaged in misconduct when she declined to consider the evidence of defendants' communications with The Doctor's Company and MedChoice's insureds. But the mere fact that Arbitrator Rasmussen reversed course after the hearing does not establish that her decision was made in bad faith or that her evidentiary ruling prejudiced MedChoice. To the contrary, the evidence and testimony adduced at the hearing supplied an adequate factual basis for denying MedChoice's counterclaim.

---

[3] MedChoice contends that Arbitrator Rasmussen's decision left it without time to obtain the attendance of critical third-party out-of-state witnesses. However, despite learning that the hearing would be scheduled for February 20, 2017, on January 31, MedChoice waited until February 14, to request subpoenas compelling their attendance. Although MedChoice is correct that the hearing date was not officially confirmed until Arbitrator Rasmussen issued the Scheduling Order on February 13, 2017, Stone Decl., Ex. X, it cannot reasonably blame Arbitrator Rasmussen for its own failure to prepare for the possibility that the hearing would not be postponed.

1    Arbitrator Rasmussen's ruling that the Exclusive Producer Agreement was illegal and

2    unenforceable is premised on the undisputed fact that REI Protect was unable to obtain an

3    insurance producer's license in California.  That ruling provides a clear predicate for Arbitrator

4    Rasmussen's conclusions that REI Protect was not liable for "conversion" of MedChoice's

5    advances, had not tortiously interfered with MedChoice's relationships with its insureds, and had

6    not breached any duty of loyalty to MedChoice.  In the absence of the Exclusive Producer

7    Agreement, REI Protect was under no obligation to exclusively refer its clients to MedChoice

8    and the sole method for repayment of the advances set forth in the Limited Services

9    Agreement—offset of commissions owed under the Exclusive Producer Agreement, Stone

10   Decl., Ex. B (Limited Services Agreement, ¶ 3)—was no longer enforceable.

11   Arbitrator Rasmussen likewise had a factual basis for denying MedChoice's claims for

12   negligent misrepresentation and violation of the Washington Uniform Trade Secrets Act.  Ms.

13   Misrahy testified that a successful first year for the program would have generated $200,000,

14   suggesting that Medchoice had not genuinely relied on Dr. Katz's representation that he

15   expected to generate $1.4 million in premiums.  Stone Decl., Ex. A (Arbitration Transcript at

16   216:21-217:10).  Similarly, Dr. Katz testified that REI Prtoect had not recived proprietary trade

17   secret information from MedChoice, Stone Decl., Ex. A (Arbitration Transcript at 44:22-45:14),

18   and former MedChoice executive Cary Ecker testified that he was "not aware of what

19   proprietary information MedChoice actually has" regarding the REI Protect Program.  *Id.*

20   (Arbitration Transcript at 194:16-23).

21   Although Arbitrator Rasmussen did not detail the reasons for her ruling, the Court will

22   not interfere with an evidentiary matter committed to her sound discretion.  "An arbitrator need

23   not explain his or her rationale for an award, and the Court should confirm an award if a ground

ORDER - 16

for the arbitrator's decision can be inferred from the facts of the case." *See SF Green Clean*, 2014 WL 3920037, at *6. Because the evidence and testimony presented during the arbitration hearing provide grounds for Arbitrator Rasmussen's decision to decline to consider additional evidence, vacatur on these grounds is unwarranted.

### C.     Arbitrator Rasmussen did not Exceed her Powers

MedChoice's final argument is that vacatur is warranted under 9 U.S.C. § 10(a)(4) because Arbitrator Rasmussen exceeded her powers by failing to segregate REI Protect's fee award. Arbitrators exceed their powers in this regard not when they merely interpret or apply the governing law incorrectly, but when the award is completely irrational or exhibits a manifest disregard of the law.[4] *Biller v. Toyota Motor Corp.*, 668 F.3d 655, 665 (9th Cir. 2012). An award is completely irrational only where the arbitration decision fails to draw its essence from the agreement, and exhibits a manifest disregard of the law only if it is clear from the record that the arbitrators recognized the applicable law and then ignored it. *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 641 (9th Cir. 2010). Neither of these circumstances is present here.

Although MedChoice complains that Arbitrator Rasmussen failed to articulate any basis for her decision not to segregate fees between REI Protect's successful and unsuccessful claims, an arbitrator is not required to set forth their reasoning supporting an award. *See Biller*, 668 F.3d

---

[4] In MedChoice's response to defendants' motion for summary judgment, MedChoice argues that Arbitrator Rasmussen exceeded her powers in concluding that the AAA had jurisdiction over the parties' dispute and by concluding that Dr. Katz was not a party to either the Limited Services Agreement or the Exclusive Producer Agreement. Pl.'s Response, docket no. 13 at 18. However, it appears that MedChoice has abandoned these arguments because they are not included in MedChoice's motion to vacate before this Court, *see* docket no. 22, or in the motion to vacate filed in King County Superior Court, *see* Stone Decl., docket no. 28, Ex. A. Even if the Court were to consider the arguments, MedChoice has not shown that Arbitrator Rasmussen's rulings were completely irrational or in manifest disregard of the law and thus, her rulings on those issues must be upheld. *See French v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 784 F.2d 902, 906 (9th Cir. 1986).

at 666.  MedChoice may disagree with Arbitrator Rasmussen's decision not to segregate, but there is no indication that her decision not to do so was completely irrational or in manifest disregard of Washington law.

### D. Conclusion

Because MedChoice has failed to establish that Arbitrator Rasmussen was guilty of misconduct under § 10(a)(3) or exceeded her powers under § 10(a)(4), its motion to vacate the award is denied.  Because vacatur is unwarranted, the Court will grant defendants' motion to confirm the award.  *See Kyocera Corp.*, 341 F.3d at 997 ("[I]f a party seeks a judicial order confirming an arbitration award, "the court must grant such an order unless the award is vacated, modified, or corrected *as prescribed in* sections 10 and 11 of this title." (emphasis in original) (citing 9 U.S.C. § 9)).  Accordingly, Arbitrator Rasmussen's Final Award, Stone Decl., Ex. EE, is hereby confirmed.

## II. Defendants' Motion for Summary Judgment

### A. Legal Standard

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); Fed. R. Civ. P. 56(c).  There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict in that party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The moving party has the initial burden of showing the absence of a genuine issue of fact for trial.  *Celotex*, 477 U.S. at 325.  If the moving party meets its initial burden, the non-

moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 324; *Anderson*, 477 U.S. at 250.

**B.      Analysis**

Defendants argue that upon confirmation of Arbitrator Rasmussen's award, MedChoice's claims are barred by the doctrines of collateral estoppel and res judicata. Res judicata,[5] or claim preclusion, is intended to prevent relitigation of an entire cause of action. *Christensen v. Grant County Hosp. Dst. No. 1*, 152 Wn.2d 299, 306 (2004). Collateral estoppel, or issue preclusion, on the other hand, bars relitigation of particular issues in a subsequent proceeding involving the same parties. *Christensen*, 152 Wn.2d at 306.

MedChoice argues that the doctrines of collateral estoppel and res judicata cannot be applied to any of its claims in this case because (1) the arbitration award is not a final decision on the merits; and (2) MedChoice did not receive a full and fair opportunity to litigate its claims in the underlying arbitration.

**1.      Final Determination on the Merits**

The Washington Court of Appeals are not in agreement on the issue of whether, under contractual arbitration, a final judgment is required before preclusion principles can be applied. *Compare Chanele v. Channel By & Through Marsh*, 61 Wn. App. 295 (1991) and *Larsen v. Farmers Ins. Co.*, 80 Wn. App. 259, 266-68 (1996), *with Dougherty v. Nationwide Ins. Co.*, 58 Wn. App. 843, 849 (1990) (suggesting that the Legislature intended to treat an arbitration award as a "final, complete, and binding decision resolving the dispute," and thus, is "the equivalent of a final judgment entered by a court"). This disagreement notwithstanding, both *Chanele* and

---

[5] The term res judicata has sometimes been used to refer to both claim preclusion and issue preclusion. *See Christensen*, 152 Wn.2d at 306, n. 3.

1    *Larsen* are distinguishable because in both cases the Arbitration Award had never been

2    confirmed.  The Court is satisfied that having confirmed Arbitrator Rasmussen's Final Award

3    and denied MedChoice's motion to vacate, the award and the judgment that will be entered will

4    constitute a final determination on the merits sufficient to be given preclusive effect under

5    Washington law.

6    ### 2.    Full and Fair Opportunity to Litigate

7    In determining whether a prior adjudication should be given preclusive effect, Courts

8    focus on whether the prior adjudication offered the parties a full and fair opportunity to litigate

9    their claims.  *See Barr v. Day*, 69 Wn. App. 833, 943 (1993), *rev'd in part on other grounds*, 124

10   Wn.2d 318 (1994).  In support of its contention that it was deprived of a full and fair opportunity

11   to litigate its claims, MedChoice repeats its argument that the expedited nature of the underlying

12   arbitration prevented it from obtaining discovery[6] and presenting the testimony of its non-party

13   witnesses.  The Court finds that under the circumstances, the formal arbitration proceeding—

14   during which MedChoice submitted opening and closing briefs, called and cross-examined

15   witnesses under oath, and introduced exhibits—furnished MedChoice with a full and fair

16   opportunity to litigate its counterclaim.[7]

17   _____

18   [6] Even if the arbitration had not been administered on the Expedited Procedures track, it is not clear that
Arbitrator Rasmussen would have had the authority under the FAA to order pre-hearing discovery from non-

19   parties.  The Ninth Circuit has not decided the issue and there is disagreement among the circuits.  The district
courts in this circuit which have considered the issue have concluded that an arbitrator cannot compel a non-party

20   to attend depositions or provide pre-hearing document discovery outside the presence of an arbitrator.  *See CVS
Health Corporation v. Vividus LLC*, 2016 WL 3227160, at *2 (D. Ariz. June 13, 2016) (collecting cases); *see
also McTammany v. Foundation Capital Partners L.P.*, 2015 WL 12781404, at *2 (C.D. Cal. 2015).

21   [7] MedChoice argued for the first time during oral argument that because Arbitrator Rasmussen's Final
Award denies MedChoice's "counterclaim" rather than "counterclaims" it is unclear whether Arbitrator

22   Rasmussen considered each of MedChoice's claims alleged at arbitration.  However, Arbitrator Rasmussen's
Scheduling Order specifically refers to all of MedChoice's claims using the singular "counterclaim."  Stone

23   Decl., Ex. X.  Moreover, as evidenced by the briefing submitted to Arbitrator Rasmussen, MedChoice argued for
relief on each of the claims it alleged at arbitration.  The Court finds that in denying MedChoice's "counterclaim"

### 3. MedChoice's Claims in this Action are Barred by Res Judicata

Under the doctrine of res judicata, a plaintiff is barred from litigating claims that either were, or should have been, litigated in a former action. *Kuhlman v. Thomas*, 78 Wn. App. 115, 120 (1995). The purpose of the doctrine is to eliminate duplicitous litigation and yet allow a party to litigate matters not properly included in the former action. *Id.* Accordingly, dismissal on the basis of res judicata is appropriate in cases where the moving party proves a concurrence of identity in four respects with the subsequent action: (1) subject matter; (2) cause of action; (3) persons and parties; and (4) the quality of the persons for or against whom the claim is made. *Rains v. State*, 100 Wn.2d 660, 663 (1983). Here, Arbitrator Rasmussen's Final Award shares all four identities with the present action.

#### a. Subject Matter

The prior arbitration and the present federal action both concern the same transaction and underlying conduct of REI Protect and Dr. Katz. The Court finds that this is sufficient to satisfy the subject matter element.[8] *See Feminist Women's Health Center v. Codispoti*, 63 F.3d 863, 867 (1995); *see also Bilal v. Seattle School Dist. No. 1*, 2013 WL 5743881, at *2 (W.D. Wash. 2013).

#### b. Cause of Action

Whether causes of action are identical "cannot be determined precisely by mechanistic application of a simple test." *Rains*, 100 Wn.2d at 662. Instead, courts are to evaluate the following factors: (1) whether rights or interests established in the prior judgment would be

---

in its entirety, Arbitrator Rasmussen denied each of the claims submitted in MedChoice's "Arbitration Answering Statement and Counterclaim or Joinder/Consolidation Request." Stone Decl., Ex. T.

[8] MedChoice raises no argument that the subject matter of the arbitration and the present action are different.

destroyed or impaired by prosecution of the second action; (2) whether substantially the same

evidence is presented in the two actions; (3) whether the two suits involve infringement of the

same right; and (4) whether the two suits arise out of the same transactional nucleus of facts. *Id.*

Having considered these factors, the Court finds that the prior arbitration and the present

lawsuit share identity of cause of action. *See Bilal*, 2013 WL 5743881, at *3. Defendant has an

interest in the finality and reliability of the binding arbitration proceeding, which would be

impaired by allowing MedChoice to relitigate its claims in federal court; the claims in this action

arise out of the same transactional nucleus of facts—the events surrounding Dr. Katz's

termination of the Exclusive Producer Agreement and his subsequent work for The Doctor's

Company; and it is clear that resolution of the present action would require the jury and the Court

to reconsider the same evidence presented at the arbitration hearing.

Finally, the two actions involve alleged infringement of the same rights. MedChoice's

claims for breach of contract, misappropriation of trade secrets, conversion, tortious interference,

negligent misrepresentation, and breach of fiduciary duties and/or the duty of loyalty involve

identical allegations to those MedChoice raised and litigated at arbitration. And although

MedChoice asserts "additional claims" in the present action for injunctive relief, unjust

enrichment, promissory estoppel, trespass to chattels, intentional misrepresentation and fraud,

and breach of the implied duty of good faith and fair dealing, the Court finds that these

"additional claims" seek recovery for infringement of the same rights.

In this context, Washington courts have held that res judicata applies to preclude claims

not explicitly raised in a prior proceeding where the claims merely present "an alternate theory of

recovery or an alternate remedy." *See Sound Built Homes, Inc. v. Windermere Real

Estate/South, Inc.*, 118 Wn. App. 617, 629 (2003) (quoting *Kelly-Hansen v. Kelly-Hansen*, 87

Wn. App. 320, 331 (1997)); *see also Codispoti*, 63 F.3d at 868. In *Sound Built Homes*, the court concluded that a prior action for equitable indemnity and negligent misrepresentation barred a subsequent action alleging breach of an implied warranty of authority because all three theories sought the same recovery and were based on the same facts, the same evidence, and the same transaction. *Sound Built Homes*, 118 Wn. App. at 632.

Like *Sound Built Homes*, the rights allegedly infringed by MedChoice's "additional claims" are the same as those already litigated at arbitration: MedChoice's right to enforce the exclusive Producer Agreement and its rights to recover its advances, its investment of employee time and resources, and its damages arising from REI Protect's alleged breach of the Exclusive Producer Agreement. Where, as here, the only difference between the claims alleged in the earlier proceeding is the substantive legal theory on which the plaintiff relies, the causes of action are identical for the purposes of res judicata. *See Sound Built* Homes, 118 Wn. App. at 632; *see also Codispoti*, 63 F.3d at 868.

### c.     Persons and Parties and their Quality

With regard to the third and fourth elements of res judicata, the Court finds that the arbitration and the present action share identity of parties and their quality. Both actions involve the same parties—Dr. Katz, REI Protect, and MedChoice. *See Bilal*, 2013 WL 5743881, at *2. MedChoice argues that because it has included Dr. Katz as a party to the present action in his individual capacity and Arbitrator Rasmussen declined to do so during the arbitration, the actions do not involve the same parties. However, the Court finds that Dr. Katz and REI Protect must be treated as the same party for the purposes of applying the doctrine of res judicata because Dr. Katz is in privity with REI Protect. *See Ensley v. Pitcher*, 152 Wn. App. 891, 902-03 (2009); *see also Kuhlman*, 78 Wn. App. at 121.

1    REI Protect's liability at arbitration turned exclusively on the propriety of Dr. Katz's

2    conduct.  REI Protect could not have breached the Exclusive Producer Agreement,

3    misappropriated trade secrets, converted MedChoice's property, tortiously interfered with

4    MedChoice's business expectancies, breached its fiduciary duties, or negligently misrepresented

5    its ability to attain business for MedChoice except through the conduct of Dr. Katz, its sole

6    member.  Thus, Arbitrator Rasmussen's denial of MedChoice's counterclaim with respect to

7    REI Protect necessarily involved a determination that Dr. Katz had not engaged in this conduct.

8    The Court concludes that MedChoice's counterclaims against REI Protect was, in essence, a suit

9    against Dr. Katz and therefore that Dr. Katz and REI Protect must be viewed as "sufficiently the

10   same, if not identical" for the purposes of res judicata.  *See Kuhlman*, 78 Wn. App. at 121-22.

11   **Conclusion**

12          For the foregoing reasons, plaintiff's motion to vacate, docket no. 22, is DENIED and

13   defendants' motion for summary judgment, docket no. 7, is GRANTED.  Arbitrator

14   Rasmussen's Final Award is CONFIRMED and MedChoice's claims in this action are

15   DISMISSED with prejudice.  The Clerk is DIRECTED to enter judgment consistent with this

16   Order, to send a copy of this Order and the Judgment to all counsel of record, and to CLOSE this

17   case.

18          IT IS SO ORDERED.

19          Dated this 8th day of September 2017.

20

21          _____

22          Thomas S. Zilly
            United States District Judge

23

ORDER - 24